```
                                          FILED
                                   CLERK, U.S. DISTRICT COURT

                                     5/14/2024

                                CENTRAL DISTRICT OF CALIFORNIA
                                BY:        CDO        DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2024 Grand Jury

| UNITED STATES OF AMERICA, | CR No.  2:24-cr-00305-MRA |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1349: Conspiracy to Commit Bank Fraud; 18 U.S.C. § 1028A(a)(1): Aggravated Identity Theft; 18 U.S.C. § 1344(2): Bank Fraud; 18 U.S.C. § 2114(a): Robbery of a Post Office; 18 U.S.C. § 1708: Mail Theft; 18 U.S.C. §§ 982, 981(a)(1)(C), 924 and 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| ANTONIO HERNANDEZ, aka "5tonio0," aka "Tonio," IVAN MURILLO-HERNANDEZ, aka "ivann_1973," and ALEXIS GARCIA MARTINEZ, aka "KrayHam," aka "Krayster," aka "007Krayster," | |
| Defendants. | |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1349]

[ALL DEFENDANTS]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1.   Bank of America, N.A. ("Bank of America" or "BofA"), Citibank, N.A. ("Citibank"), Wells Fargo Bank, N.A. ("Wells Fargo"),

JP Morgan Chase Bank, N.A. ("Chase"), and Union Bank, N.A. ("Union Bank" and, collectively, the "Financial Institutions") were financial institutions insured by the Federal Deposit Insurance Corporation.

2.   Defendants ANTONIO HERNANDEZ, also known as ("aka") "5tonio0," aka "Tonio," IVAN MURILLO-HERNANDEZ, aka "ivann_1973," and ALEXIS GARCIA MARTINEZ, aka "KrayHam," aka "Krayster," aka "007Krayster," were members of a criminal conspiracy.  In furtherance of a scheme to fraudulently obtain money from bank accounts, members of the conspiracy engaged in, among other things, bank fraud, mail theft, aggravated identity theft, and robbery of Post Offices.  The conspiracy operated in the Central District of California and elsewhere.

3.   "Co-conspirator A," "Co-conspirator B," "Co-conspirator C," and "Co-conspirator D" were minors under the age of 18 who each participated in the theft of mail from multiple post office back docks and, at times, communicated with other co-conspirators to plan back dock thefts.

4.   Instagram was a social media platform that defendants HERNANDEZ and MURILLO-HERNANDEZ, and other co-conspirators, used to share photographs and videos with followers related to the fraudulent scheme and to communicate privately with each other.  Instagram users could post an Instagram "story," which was a temporary post visible to the user's Instagram followers that would disappear after 24 hours.  Instagram stories could contain photographs, videos, and/or text, and followers could interact with such stories by liking, commenting, or sending an Instagram direct message to the story's creator.  An Instagram direct message was a private message that

Instagram users could send to one or more other users and could include text, photographs, videos, and voice messages.

B.   THE OBJECT OF THE CONSPIRACY

5.   Beginning no later than on or about November 14, 2022, and continuing through at least on or about August 18, 2023, in Los Angeles, Orange, Riverside, and San Bernardino Counties, within the Central District of California, and elsewhere, defendants HERNANDEZ, MURILLO-HERNANDEZ, and GARCIA MARTINEZ, and Co-Conspirator A, Co-conspirator B, Co-conspirator C, and Co-conspirator D conspired with each other and with others known and unknown to commit bank fraud, in violation of Title 18, United States Code, Section 1344(2).

C.   THE MANNER AND MEANS OF THE CONSPIRACY

6.   The object of the conspiracy was carried out, and was to be carried out, in substance, as follows:

a.   Defendants HERNANDEZ and MURILLO-HERNANDEZ, and other co-conspirators, would steal mail from United States Post Office docks or other locations in the mail stream, including by using threats of force, with the aim of stealing mail containing checks belonging to various victims.

b.   Defendant GARCIA MARTINEZ would provide vehicles to defendant HERNANDEZ, Co-conspirator A, and other co-conspirators to use in traveling to post offices to commit back dock thefts, and would advise Co-conspirator A how to commit back dock thefts and engage in other illegal conduct without being caught by law enforcement.

c.   Defendants HERNANDEZ and MURILLO-HERNANDEZ, and other co-conspirators, would solicit bank account holders through social media to provide their debit cards and bank account information to

3

the co-conspirators, promising these account holders a cut of any fraudulent funds deposited into their accounts in return.  To circumvent the fraud protections of the financial institutions, the co-conspirators would specifically request bank accounts that had been open for a certain amount of time so the co-conspirators could get access to the stolen funds more quickly.

d.   Third-party bank account holders who were aware of the advertisements and/or defendants' scheme would contact defendants HERNANDEZ and MURILLO-HERNANDEZ, and other co-conspirators, about participating in the check fraud.

e.   Defendants HERNANDEZ and MURILLO-HERNANDEZ, and other co-conspirators, would exchange the bank account information obtained from bank account holders with each other and other co-conspirators.

f.   Defendants HERNANDEZ and MURILLO-HERNANDEZ, and other co-conspirators, would deposit the stolen checks into the bank accounts that had been sourced as described in sub-paragraphs 6.d and 6.e.  In doing so, the co-conspirators falsely represented that they were the payees on the checks and were entitled to the funds and concealed that they were not the payees on the stolen checks and that they were not authorized to deposit the checks or receive the payees' funds.

g.   Defendants HERNANDEZ and MURILLO-HERNANDEZ, and other co-conspirators, would then rapidly deplete the fraudulently deposited funds from the account holders' accounts by making cash withdrawals, electronic transfers, and/or debit card purchases.

h.   Defendants HERNANDEZ and MURILLO-HERNANDEZ, and other co-conspirators, would also sell or attempt to sell stolen checks to others who would fraudulently cash them.

i.   To further the scheme, defendants HERNANDEZ, MURILLO-HERNANDEZ, and GARCIA MARTINEZ, and other co-conspirators, would aid, abet, counsel, command, induce, procure, and cause the commission of mail theft and the endorsement and depositing of stolen checks by others, including at least three individuals whom defendants knew to be minors under the age of 18.

7.   During their fraudulent scheme, defendants intended to cause at least approximately $800,000 in losses to the Financial Institutions.

D.   OVERT ACTS

8.   On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendants HERNANDEZ, MURILLO-HERNANDEZ, and GARCIA MARTINEZ, together with others known and unknown to the Grand Jury, committed the following overt acts, among others, within the Central District of California, and elsewhere:

Overt Act No. 1:   On November 28, 2022, at a Wells Fargo Automated Teller Machine ("ATM") in Highland Park, California, defendant HERNANDEZ and Co-conspirator A cashed a check in the amount of $1,800 from Victim D.D. to Victim A.R. using a Wells Fargo bank account ending in 7626 that belonged to Co-conspirator A and without the victims' permission.

Overt Act No. 2:   On December 17, 2022, defendant HERNANDEZ and Co-conspirator A stole mail from an apartment building in Highland Park, California.

Overt Act No. 3:   On December 18, 2022, defendant HERNANDEZ posted a story on his Instagram account advertising the sale of

stolen checks and seeking third parties with BofA accounts older than two years in which to deposit the stolen checks.

Overt Act No. 4:   On December 28, 2022, Co-conspirator A and other co-conspirators stole mail from a post office in Studio City, California.

Overt Act No. 5:   On December 29, 2022, using coded language, defendant HERNANDEZ sent a direct Instagram message to an unknown individual identified as "Blinker," in which defendant HERNANDEZ said he had checks available if "Blinker" had a BofA account at least two years old.

Overt Act No. 6:   On December 29, 2022, defendant HERNANDEZ sent a direct Instagram message to an unknown individual advertising that if the unknown person "wanna make money . . . lmk if u got any checking account 2+ years."

Overt Act No. 7:   On December 29, 2022, Co-conspirator A sent defendant HERNANDEZ an Instagram direct message that said, using coded language, that Co-conspirator A was planning to sell a stolen check in the amount of $10,000 from a BofA account with an address in Studio City, because "we can't do nun with it."

Overt Act No. 8:   On December 29, 2022, defendant HERNANDEZ responded to Co-conspirator A's direct Instagram message, "Fuck it."

Overt Act No. 9:   On December 31, 2022, defendant HERNANDEZ posted an Instagram story depicting a $1,500 deposit at a BofA ATM with the caption, using coded language, soliciting responses from users who had a checking account at least two years old or users who had a joint bank account.

Overt Act No. 10:   In January 2023, defendant HERNANDEZ posted an Instagram story depicting several checks made out to other people

from addresses in Studio City, including the $10,000 BofA check referenced above.

Overt Act No. 11:   On January 2, 2023, Co-conspirator A posted an Instagram story depicting the same $10,000 BofA check with the caption, "Need a boaa [i.e., a Bank of America account] asap."

Overt Act No. 12:   On January 3, 2023, Co-conspirator A sent a co-conspirator Telegram messages listing the addresses of multiple post offices, including the address of a post office in Azusa, California.

Overt Act No. 13:   On January 3, 2023, Co-conspirator A sent defendant HERNANDEZ Telegram messages listing the addresses of multiple post offices, including the address of a post office in Azusa, California.

Overt Act No. 14:   On January 10, 2023, co-conspirators stole mail from a post office in Azusa, California.

Overt Act No. 15:   On January 15, 2023, defendant HERNANDEZ published an Instagram story depicting himself holding a large amount of fanned-out cash.

Overt Act No. 16:   On February 1, 2023, defendant HERNANDEZ possessed without authorization two checks made out to other people with return addresses in Studio City, California.

Overt Act No. 17:   On March 2, 2023, co-conspirators drove to a post office in La Mirada, California, where they intended to steal mail.

Overt Act No. 18:   On March 2, 2023, co-conspirators approached the back dock of a post office in La Mirada, California, but fled after an employee approached them.

<u>Overt Act No. 19:</u>   On April 3, 2023, Co-conspirator A and other co-conspirators arranged via text messages with defendant GARCIA MARTINEZ to obtain a car to use for back dock thefts in exchange for $600.

<u>Overt Act No. 20:</u>   On April 3, 2023, Co-conspirator A sent Telegram messages to Co-conspirator B containing a list of post offices, including post offices in Upland and Anaheim, California.

<u>Overt Act No. 21:</u>   Between April 3 and April 4, 2023, Co-conspirator A, Co-conspirator B, and Co-conspirator C coordinated over Instagram direct messages their transportation to multiple post offices using the car Co-conspirator A had arranged to obtain from defendant GARCIA MARTINEZ.

<u>Overt Act No. 22:</u>   On April 4, 2023, defendant GARCIA MARTINEZ drove a silver Toyota Camry (the "silver Camry") from Lynwood, California to defendant HERNANDEZ's address of record to lend the car to defendant HERNANDEZ and Co-Conspirator A.

<u>Overt Act No. 23:</u>   On April 4, 2023, a co-conspirator picked up defendant MURILLO-HERNANDEZ, Co-conspirator B, and Co-conspirator C in the silver Camry.

<u>Overt Act No. 24:</u>   On April 4, 2023, defendants HERNANDEZ and MURILLO-HERNANDEZ, and Co-Conspirator A, Co-conspirator B, and Co-conspirator C traveled to a post office in La Canada, California in the silver Camry.

<u>Overt Act No. 25:</u>   On April 4, 2023, defendants HERNANDEZ and MURILLO-HERNANDEZ, and Co-conspirator A and Co-conspirator B, tried to break into a post office in La Canada, California, to steal mail, but did not do so because the door was locked.

<u>Overt Act No. 26:</u>   On April 4, 2023, Co-conspirator C drove the silver Camry, in which defendants HERNANDEZ and MURILLO-HERNANDEZ and Co-Conspirator A and Co-conspirator B were passengers, to a post office in Upland, California.

<u>Overt Act No. 27:</u>   On April 4, 2023, defendants HERNANDEZ and MURILLO-HERNANDEZ, and Co-Conspirator A and Co-conspirator B, entered a post office in Upland, California through the back dock and stole mail.

<u>Overt Act No. 28:</u>   On April 4, 2023, defendant HERNANDEZ punched a United States Postal Service employee, Victim E.E., after Victim E.E. tried to photograph the license plate of the silver Camry as defendants HERNANDEZ and MURILLO-HERNANDEZ and Co-Conspirator A and Co-conspirator B attempted to flee a post office in Upland, California, after stealing mail from that post office.

<u>Overt Act No. 29:</u>   On April 4, 2023, Co-conspirator C drove the silver Camry, in which defendants HERNANDEZ and MURILLO-HERNANDEZ and Co-Conspirator A and Co-conspirator B were passengers, to a post office in Riverside, California, and conducted surveillance of that post office.

<u>Overt Act No. 30:</u>   On April 4, 2023, Co-conspirator C drove the silver Camry, in which defendants HERNANDEZ and MURILLO-HERNANDEZ and Co-Conspirator A and Co-conspirator B were passengers, to a post office in Corona, California, and conducted surveillance of that post office.

<u>Overt Act No. 31:</u>   On April 4, 2023, Co-conspirator C drove the silver Camry, in which defendants HERNANDEZ and MURILLO-HERNANDEZ and Co-Conspirator A and Co-conspirator B were passengers, to a post office in Anaheim, California, where defendants HERNANDEZ and

MURILLO-HERNANDEZ and Co-Conspirator A and Co-conspirator B stole mail from the loading dock of the post office.

Overt Act No. 32: On April 4, 2023, Co-conspirator C drove the silver Camry, in which defendants HERNANDEZ and MURILLO-HERNANDEZ and Co-Conspirator A and Co-Conspirator B were passengers, to a parking lot behind a restaurant on South State College Boulevard in Anaheim and parked behind a trash dumpster, where defendants HERNANDEZ and MURILLO-HERNANDEZ and Co-Conspirator A and Co-Conspirator B opened mail they had stolen, separated and kept checks they found, and took turns carrying large amounts of discarded mail to the dumpster.

Overt Act No. 33: On April 4, 2023, after a marked Anaheim Police Department ("APD") unit approached the silver Camry containing defendants HERNANDEZ and MURILLO-HERNANDEZ and Co-Conspirator A, Co-Conspirator B, and Co-Conspirator C, the silver Camry fled at a high speed, ultimately leading police on a high-speed pursuit on both the 57 and 60 Freeways; the occupants dumped mail out of the window of the silver Camry as it fled along the freeway.

Overt Act No. 34: On April 4, 2023, in Rowland Heights, California, after leading law enforcement on a high-speed chase in the silver Camry, defendants HERNANDEZ and MURILLO-HERNANDEZ, and Co-Conspirator A, Co-Conspirator B, and Co-Conspirator C fled the silver Camry on foot to evade law enforcement.

Overt Act No. 35: On April 4, 2023, after defendant HERNANDEZ and Co-conspirator A successfully evaded law enforcement, Co-conspirator A texted defendant GARCIA MARTINEZ "Pusey / We got away / Me tonio . . . if they ask about me and tonio say we neighbor and been in the car before."

1    Overt Act No. 36:   On April 4, 2023, via text messages, Co-
2    conspirator A told defendant GARCIA MARTINEZ that the police likely
3    found the keys to the silver Camry because Co-conspirator A threw
4    them in the grass, that the occupants of the car had to "throw the
5    slips" [i.e., threw some of the checks and mail out of the car
6    window], and sent a photograph of an envelope full of checks.

7    Overt Act No. 37:   On April 4, 2023, Co-conspirator B posted a
8    video on Instagram taken from inside the silver Camry depicting a
9    pursuing police car as seen in the front passenger side rear view
10   mirror for followers and potential stolen check customers to "like,"
11   a screenshot of which is below:



22   Overt Act No. 38:   On April 4, 2023, Co-conspirator B published
23   an Instagram story containing a photograph depicting the same
24   envelope of checks that Co-conspirator A texted to defendant GARCIA
25   MARTINEZ that same day; Co-conspirator B captioned the photograph,
26   "Moments before disaster."

27   Overt Act No. 39:   On April 5, 2023, defendant GARCIA MARTINEZ
28   advised Co-conspirator A over text message, "[Co-conspirator B] takes

the hit . . . Ima [sic] say he took [the car] without permission,"
and told Co-conspirator A that Co-conspirator A and defendant
HERNANDEZ should get their driver's licenses so that they "would have
stopped got a ticket but not search car . . . Be smart bro."

Overt Act No. 40:   On June 8, 2023, two co-conspirators stole
mail from the back dock of a post office in El Segundo, California,
and fled in a black sedan.

Overt Act No. 41:   On June 8, 2023, at least three co-
conspirators stole mail from the workroom of a post office in West
Hills, California, and fled in a black Mercedes Benz sedan.

Overt Act No. 42:   On June 8, 2023, defendant HERNANDEZ
published an Instagram story of a video depicting a hand sorting
through dozens of different checks, including a light pink check in
the amount of $555,099.25 from the Chase Bank account of Victim
Business E.R.C. located in West Hills, California.

Overt Act No. 43:   On June 9, 2023, defendant HERNANDEZ
reposted an Instagram story from Co-conspirator D depicting three
pink checks from the Chase Bank account of Victim Business E.R.C. in
which Co-conspirator D wrote, "The lil homie came through with the
slips / Thank you my boy," and tagged defendant HERNANDEZ's Instagram
account as an advertisement to Instagram followers.

Overt Act No. 44:   On June 9, 2023, Co-conspirator A published
an Instagram story depicting six pink checks from Victim Business
E.R.C. and a seventh check bearing an account owner's address in El
Segundo, California captioned for followers, "LMK ON BANKS / get
paid / got slips ready," as an advertisement to sell stolen checks
and/or to deposit stolen checks to user bank accounts in exchange for
a fee.

1       <u>Overt Act No. 45:</u>   In or around June 2023, defendant HERNANDEZ

2   deposited two of Victim Business E.R.C.'s checks in the amount of

3   $3,446.24 and $1,725 into third-party checking accounts at BofA and

4   U.S. Bank, respectively.

5       <u>Overt Act No. 46:</u>   On June 12, 2023, three co-conspirators

6   stole mail from the workroom floor of a post office in Anaheim,

7   California, and fled in a black Mercedes Benz sedan.

8       <u>Overt Act No. 47:</u>   On June 12, 2023, defendant HERNANDEZ posted

9   on Instagram a photograph of a person sitting in the driver's seat of

10  a black Mercedes Benz sedan holding a large amount of cash fanned in

11  front of the person's face, a copy of which is below:



12
13
14
15
16
17
18
19
20
21
22

23      <u>Overt Act No. 48:</u>   On June 12, 2023, defendant HERNANDEZ

24  published an Instagram story depicting several checks, including a

25  Chase Bank check in the amount of $2,926.83 with the caption,

26  "BANKS!! BOA CHASE NAVY FEDERAL WELLS FARGO!"

27
28

1    Overt Act No. 49:   On June 15, 2023, defendant HERNANDEZ

2  published an Instagram story depicting an ATM screen showing the

3  deposit of a check in the amount of $2,926.83.

4    Overt Act No. 50:   On August 18, 2023, after law enforcement

5  searched the residence of defendant HERNANDEZ and Co-conspirator A,

6  Co-conspirator A published an Instagram story depicting law

7  enforcement outside his window.

8    Overt Act No. 51:   On August 18, 2023, after law enforcement

9  searched the residence of defendant HERNANDEZ Co-conspirator A,

10  defendant HERNANDEZ published an Instagram story with the text, "I

11  got raided by FBI earlier delete anything you got of [sic] me."

14

COUNT TWO

[18 U.S.C. §§ 1344(2), 2(a)]

[DEFENDANT HERNANDEZ]

9.   The Grand Jury re-alleges paragraphs 1 through 4, 6, and 7 of this Indictment here.

A.   THE SCHEME TO DEFRAUD

10.   Beginning on a date unknown to the Grand Jury, but no later than on or about November 14, 2022, and continuing through at least on or about August 18, 2023, in Los Angeles, Orange, Riverside, and San Bernardino Counties, within the Central District of California, and elsewhere, defendant ANTONIO HERNANDEZ, also known as ("aka") "5tonio0," aka "Tonio," together with Co-conspirator A, and others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised and executed a scheme to obtain moneys, funds, assets, and other property owned by and in the custody and control of Wells Fargo Bank, N.A. by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

11.   The fraudulent scheme operated and was carried out, in substance, as described in paragraphs 6 and 7 of this Indictment.

B.   EXECUTION OF THE FRAUDULENT SCHEME

12.   On or about November 28, 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendant HERNANDEZ and Co-conspirator A, each aiding and abetting the other, deposited a stolen check in the amount of $1,800, made out from Victim D.D. and payable to A.R., without Victim D.D.'s or payee A.R.'s permission or authorization, into Co-conspirator A's Wells Fargo bank account ending in 7626 ("Co-conspirator A's Wells Fargo

account") and withdraw $1,800 in cash from Co-conspirator A's Wells Fargo account at an ATM in Highland Park, California.

COUNT THREE

[18 U.S.C. §§ 1028A(a)(1), 2(a)]

[DEFENDANT HERNANDEZ]

On or about November 28, 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendant ANTONIO HERNANDEZ, also known as ("aka") "5tonio0," aka "Tonio," together with Co-conspirator A and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly possessed and used, without lawful authority, a means of identification that defendant HERNANDEZ knew belonged to another person, namely, the name and bank account number of Victim D.D., during and in relation to the offenses of Conspiracy to Commit Bank Fraud, a felony violation of Title 18, United States Code, Section 1349, as charged in Count One of this Indictment, and Bank Fraud, a felony violation of Title 18, United States Code, Section 1344(2), as charged in Count Two of this Indictment.

COUNT FOUR

[18 U.S.C. §§ 2114(a), 2(a)]

[DEFENDANT HERNANDEZ]

On or about April 4, 2023, in San Bernardino County, within the Central District of California, defendant ANTONIO HERNANDEZ, also known as ("aka") "5tonio0," aka "Tonio," and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly and intentionally robbed Victim E.E. and others having lawful charge, custody, and control of mail matter and other property of the United States, in their official capacity as United States Postal Service Clerks, of mail matter and property of the United States, by means of force and violence.

COUNT FIVE

[18 U.S.C. §§ 1708, 2(a)]

[DEFENDANTS HERNANDEZ and MURILLO-HERNANDEZ]

On or about April 4, 2023, in Orange County, within the Central District of California, defendants ANTONIO HERNANDEZ, also known as ("aka") "5tonio0," aka "Tonio," and IVAN MURILLO-HERNANDEZ, aka "ivann_1973," and others known and unknown to the Grand Jury, each aiding and abetting the others, stole, took, and abstracted mail and mail matter from and out of a post office, postal station, letter box, mail receptacle, and authorized depository for mail matter, namely, the premises of the United States Post Office, located at 2320 East Lincoln Avenue, Anaheim, California, with the intent to deprive the owners of the mail and mail matter, temporarily and permanently, of its use and benefit.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982]

1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), in the event of any defendant's conviction of the offenses set forth in any of Counts One through Four of this Indictment.

2.   Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. §§ 981(a)(1)(C) and 924, and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 924 and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count Five of this Indictment.

2. Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses;

(b) All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(c) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a) and (b).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

                                        A TRUE BILL


                                        _____/s/_____
                                        Foreperson

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

SCOTT M. GARRINGER
Assistant United States Attorney
Deputy Chief, Criminal Division

BENEDETTO L. BALDING
Assistant United States Attorney
Deputy Chief, General Crimes
Section

ANGELA C. MAKABALI
Assistant United States Attorney
Cyber & Intellectual Property
Crimes Section